IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALARM.COM, INC., *ET AL.* ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SECURENET TECHNOLOGIES, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 15-807-GMS |

## ORDER CONSTRUING THE TERMS OF U.S. PATENT NOS. 7,885,635; 8,073,931; 8,473,619; and 8,478,844.[1]

After considering the submissions of the parties and hearing oral argument on the matter, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that, as used in the asserted claims of U.S. Patent Numbers 7,885,635 ("the '635 Patent"), 8,073,931 ("the '931 Patent"), 8,473,619 ("the '619 Patent"), and 8,478,844 ("the '844 Patent"):

1. The term **"automatically" and variants including "automatically establishing," "automatically discovering," "automatically . . . integrating," "automatically installs," "automatically configures"** in the '619, '844, '931, and '635 patents is construed to mean "without user input."[2]

---

[1] All docket citations refer to Civil Action No. 15-807-GMS. The abbreviation "Tr." refers to the transcript from the *Markman* Hearing on March 20, 2018, D.I. 91.

[2] The disputed term should be construed as "without user input" because that construction comports with both the description of the term in the asserted patent and its plain and ordinary meaning. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (internal citations omitted).

Defendant indicated at the *Markman* Hearing that if "without user input," is synonymous with without human input or intervention then they are "fine with that in terms of what the plain and ordinary meaning might be." *Markman*

2. The term **"gateway"** in the '619 and '844 patents is construed to be "a device at a first location for interconnecting a local area network and a separate security panel at a first location to a server at a second location."[3]

3. The term **"connection management component"** in the '619 and '844 patents is construed as a means-plus-function term. The **claimed functions** are: "automatically establishing a wireless coupling with a separate security system" and "forming a security network by automatically discovering the security system components of a security system and integrating communications and functions of the security system

---

Hr'g Tr. 29:8-13. The parties agree that "automatically" requires no user input and that "there is no need to manually reprogram the security system components during the discovering and integration stage." *Markman* Hr'g Tr. 15:2-5. The parties also agree that the meaning of "user" or "user input" means human beings and that no human input or intervention is allowed. *Markman* Hr'g Tr. 17:2-6; 29:8-13, 31:1, 37:21-38:17. Because the parties have agreed that "user" means no human intervention, the court gives the term its plain and ordinary meaning of "without user input."

[3]The parties' dispute centers on whether the "gateway" is separate from an existing security panel. *Markman* Hr'g Tr. 42:21-25. Prior to the *Markman*, the parties agreed that "security system" means "a security panel and one or more components *operatively* coupled to the security panel." (D.I. 85.) Defendant argues that the "operatively" adjective means the security system must be operable. *Markman* Hr'g Tr. 43:16-18. Defendant argues that the security panel is separate from the gateway based on the intrinsic evidence, Plaintiffs' statements during *inter partes review* ("IPR") proceedings, and the disavowal in prior litigation by Plaintiffs. *Markman* Hr'g Tr. 43:1-2, 19-20. The court is cognizant of Defendant's argument that Plaintiffs asserted a different proposed construction of this term in previous litigation, but decides the construction in the instant case based on intrinsic evidence. That said, the claims indicate that the "gateway" is separate from the security system. '619 Patent, Claim 1; *Markman* Hr'g Tr. 44:19-22. Claim 1 states that:

> a *gateway located at a first location*; a connection management component coupled to the gateway and automatically establishing a wireless coupling with a *security system installed* at the first location . . .

'619 Patent, Claim 1. The claim, therefore, suggests that the "security system" is already "*installed*" when the "gateway" establishes a connection to the security system. Similarly, Claim 1 of the '844 Patent explains that the security system exists when the "gateway" is coupled to the local area network ("LAN") and says "wherein the first location includes a *security system* comprising a plurality of security system components. . ." '844 Patent, Claim 1. The specification adds further support that the "gateway" is separate from the "security panel" explaining that:

> . . . an iHub *gateway* (also referred to herein as the gateway, the iHub of the iHub client) that *couples or integrates* into a home network (*e.g.*, LAN) and communicates directly with the home *security panel*.

'619 Patent at 4:34-47. The court, therefore, finds that the "gateway" is separate from the security system based on the intrinsic record and construes the term to mean "a device at a first location for interconnecting a local area network and a separate security panel at a first location to a server at a second location."

2

components into the security network." The **corresponding structure** is: "software executing on a processor using the algorithms shown in Figures 12 and 14."[4]

Dated: April 6, 2018

                                            UNITED STATES DISTRICT JUDGE

---

[4] The parties' central disputes focus on (1) whether the term should be construed as a means-plus-function claim; and (2) the corresponding structure for performing the two functions. During the *Markman* Hearing, Plaintiffs acknowledged that the specification explains what performs the function described by the claim element at issue. *Markman* Hr'g Tr. 80:5-6, 89:9-16. This at least suggests the term is properly construed pursuant 112 ¶ 6. But in addition, the word "component" in the claim itself is a "nonce" or non-structural word under Section 2181 of the Manual of Patent Examining Procedure. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350 (Fed. Cir. 2015). The court, therefore, finds that this term should be construed as a means-plus-function term.

    In determining the structure, the court looks to the recited functions. *Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1370 (Fed. Cir. 2001); *Micro. Chem., Inc. v. Great Plains Chem. Co.*, 194, F.3d 1250, 1258 (Fed. Cir. 1999) ("[n]or does the statute permit incorporation of structure from the written description beyond that necessary to perform the claimed function."). Both parties agree the recited functions are "automatically establishing a wireless coupling with a separate security system" and "forming a security network by automatically discovering the security system components of a security system and integrating communications and functions of the security system components into the security network." *Markman* Hr'g Tr. 85:3-12.

    Turning to the first function, automatically establishing a wireless coupling, Plaintiffs argue that it would be legal error to find steps 1250 through 1270 of Figure 12 and 1460 through 1490 of Figure 14 related to the function of wireless coupling because Figure 14 is an alternative algorithm to Figure 12. *Markman* Hr'g Tr. 86:18-23; '619 Patent at 22:17-19, 24:66-25:1. With regard to the second function, automatically discovering, Plaintiffs argue that this structure would *not* include 1260 or 1270 from Figure 12 or 1460 through 1490 from Figure 14 because all of those steps have been achieved after exiting the learn mode of 1450. *Markman* Hr'g Tr. 88:3-7. The court disagrees.

    At step 1240, the "[p]lurality of WSS capabilities and devices [are] 'learned' into [the] system." '619 Patent, Fig. 12. The specification, however, does not describe how this high-level function works. Figure 14 is a flow diagram for "wirelessly learning the gateway into an existing security system" and "discovering existent sensors under an embodiment." '619 Patent at 24:66-25:1; *Markman* Hr'g Tr. 93:6-13. As such, Figure 14 teaches the detailed steps after integrating from Figure 12. *Markman* Hr'g Tr. 78:10-14. Figure 14 explains the "[g]ateway 1320 powers up 1410 and initiates software sequences 1420 and 1425 to identify accessible [Wireless Security Panel ("WSP")]s 1311 and wireless devices 1313, respectively[.]" '619 Patent at 25:2-6. In steps 1430 to 1450 the system is set to "learn mode" and is "found." Steps 1460 to 1485 describe how to "automatically discover" the security system components. *Markman* Hr'g Tr. 79:3-9. Thus, Figure 14 is required for the WSP to learn, for the WSP protocol to add the gateway, and then to exit learn mode. *Markman* Hr'g Tr. 92:16-22. Similarly, to discover the existing sensors, steps 1460 to 1485 are required. Without those steps, nothing describes how to "automatically discover." *Markman* Hr'g Tr. 93: 14-19. Without Figure 14 nothing provides structure for the claimed functions. *Markman* Hr'g Tr. 90:18-24. Lastly, a statement by the patent owner during IPR proceedings explained that "[a]utomatic discovery is explained *in part* at Fig. 12." This adds further support to the court's conclusion that Figure 12 does not constitute the full corresponding structure to the functions. (D.I. 68, Tab 7 at 268-69); *Markman* Hr'g Tr. 92:11-15. The court, therefore, finds the corresponding structure that performs the two functions is "software executing on a processor using the algorithms shown in Figures 12 and 14."

3