IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALARM.COM, INC. and ICN
ACQUISITION, LLC,

              Plaintiffs;

v.

SECURENET TECHNOLOGIES LLC,

              Defendant.

Civil Action No. 15-807-RGA

## MEMORANDUM OPINION

Mary B. Matterer and Kenneth L. Dorsney, MORRIS JAMES LLP, Wilmington, DE; Ian R. Liston, WILSON SONSINI GOODRICH & ROSATI, P.C., Wilmington, DE; James C. Yoon (argued), Ryan R. Smith (argued), Christopher D. Mays, and Mary A. Procaccio-Flowers, WILSON SONSINI GOODRICH & ROSATI, Palo Alto, CA, attorneys for Plaintiffs.

Jack B. Blumenfeld and Stephen J. Kraftschik, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Erik B. Milch and Frank Pietrantonio, COOLEY LLP, Reston, VA; Rose Whelan (argued), and Naina Soni (argued), COOLEY LLP, Washington, DC, attorneys for Defendant.

December 21, 2018



**ANDREWS, U.S. DISTRICT JUDGE:**

Currently pending before the Court is Defendant's Motion for Summary Judgment. (D.I. 175). The parties have fully briefed the issues. (D.I. 176, 182, 198). The Court heard oral argument on December 3, 2018. (D.I. 208). After considering the briefing and arguments, the Court GRANTS-IN-PART and DENIES-IN-PART Defendant's Motion.[1]

## I. Background

Plaintiffs' predecessor-in-interest iControl Networks, Inc. filed this suit against Defendant SecureNet Technologies LLC on September 11, 2015. (D.I. 1). The suit asserted United States Patent Nos. 7,855,635 ("the '635 patent"), 8,473,619 ("the '619 patent"), 8,478,844 ("the '844 patent"), and 8,073,931 ("the '931 patent"). (*Id.* ¶¶ 3-7). The patents-in-suit are generally related to integrating an alarm system with an external security network and other interfaces. ('635 patent, Abstract; '619 patent, Abstract; '844 patent, Abstract; '931 patent, Abstract).

On June 23, 2016, Plaintiffs Alarm.com and ICN Acquisition (collectively, "Plaintiffs") entered into an Asset Purchase Agreement with iControl Networks to purchase the patents-in-suit. (D.I. 177 at 209). Plaintiff ICN is a wholly-owned subsidiary of Plaintiff Alarm.com. (D.I. 186 ¶ 2). On March 8, 2017, Plaintiff ICN completed its acquisition of the patents-in-suit. (D.I. 177 at 209, 255). On March 29, 2017, the Court substituted Alarm.com and ICN for iControl as Plaintiffs in this action. (D.I. 28). Defendant filed a Motion for Summary Judgment on October 30, 2018. (D.I. 175).

---

[1] The Court reserves determination on the issue of compliance with the marking statute until the pretrial conference.

## II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a

2

reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## III. Discussion

### A. Indefiniteness

Section 112 requires that "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014); *see also* 35 U.S.C. § 112 ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor . . . regards as the invention."). The requirement that patent claims be definite requires that patents be "precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them." *Nautilus*, 572 U.S. at 909 (cleaned up). "Indefiniteness is a question of law" appropriate for summary judgment. *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1370 (Fed. Cir. 2017). A claim term "is indefinite if its language 'might mean several different things and no informed and confident choice is available among the contending definitions.'" *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1371 (Fed Cir. 2015) (quoting *Nautilus*, 572 U.S. at 911 n.8). However, "[b]readth is not indefiniteness." *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1367 (Fed. Cir. 2017); *see also SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1341 (Fed. Cir. 2005). A term with a broad meaning will not therefore be indefinite simply because of its breadth.

3

Defendant argues that the term "objects" as used in the '931, '619, and '844 patents is indefinite because it is vague, has no discernible scope, is used in different contexts, and the experts agree that "objects" can mean anything. (D.I. 176 at 15-18). Plaintiffs reply that Defendant has failed to establish that "objects" is not reasonably certain in the context of the intrinsic evidence, that there is a material factual dispute as to whether a person of ordinary skill in the art would understand "objects' with reasonable certainty, and that Defendant's own conduct confirms "objects" was understood with reasonable certainty. (D.I. 182 at 17-22). For the following reasons, I determine that "objects" is not indefinite.

The claims of the '931, '619, and '844 patents use the term "objects" in substantially similar ways. For example, claim 1 of the '931 patent is representative:

1. A device comprising:
   a touchscreen at a first location, wherein the touchscreen includes a processor coupled to a local area network (LAN) and a security system at the first location; and
   a plurality of interfaces presented by at least one application executing on the processor of the touchscreen and presented to a user via the touchscreen, wherein the plurality of interfaces include a security interface and a network interface, wherein the security interface provides the user with control of functions of the security system and access to data collected by the security system, wherein the network interface allows the user to transfer content to and from wide area network (WAN) coupled to the LAN; and
   a remote server at a second location, wherein the remote server is coupled to the touchscreen, the remote server managing at least one of the touchscreen and the security system, **wherein objects are maintained on the remote server that correspond to at least one of at least one security system component of the security system and at least one network device of the LAN.**

('931 patent, cl. 1).

First, Defendant argues that the term as used in the claims is vague. However, as Defendant admits, the claim language makes clear that "objects" are something "that must be

4

maintained on a server remote from the home being monitored." (D.I. 176 at 15). Being maintained on a server indicates that "objects" are intangible. Furthermore, the claim language indicates that "objects" are capable of corresponding to system components and network devices. This would indicate to a person of ordinary skill in the art that "objects" refers to some sort of data or information maintained on the remote server.

Second, Defendant argues, "The '931, '619, and '844 specifications confusingly refer to 'objects' in a variety of contexts" and do not clarify the vague meaning of "objects" as used in the claims. (D.I. 176 at 16). In one section, the specification defines "objects" as "devices" including sensors, camera, home security panels, and automation devices." ('931 patent col. 8:45-49). In another section, the specification refers to the "management of[] the objects associated with an integrated security system installation." (*Id.* col. 8:37-40). Finally, a third portion of the specification refers to "media objects" like "video, photos, and widget content." (*Id.* col. 9:55-60). Yet, as discussed above, the claim language makes clear that an "object" must be maintained on a remote server. Therefore, a person of ordinary skill in the art would not confuse the specification's references to "objects" as physical devices with the term as used in the claims. Moreover, the reference to "media objects" is consistent with a broad definition of the term "objects" to include data or information. A term's broad scope does not make it indefinite. *BASF*, 875 F.3d at 1367.

Finally, Defendant argues that the "three technical experts in this case agree that . . . the term 'objects' has several meanings. (D.I. 176 at 18). This overstates and misconstrues the testimony of the technical experts. Plaintiffs' expert Dr. Clark defined "object" as "a discrete entity that can contain . . . bits and bytes that represent just about anything." (D.I. 177, Ex. 7 at 191:17-20). Plaintiffs' other expert, Dr. Rhyne, stated that an object is "a data construct

5

referenced by an identifier." (*Id.*, Ex. 8 ¶ 128). At his deposition, Dr. Rhyne stated that a data construct could be a variety of things. (*Id.*, Ex. 9 at 149:9-12). However, the fact that a term can be defined broadly does not mean that the term is indefinite. *BASF*, 875 F.3d at 1367. Defendant's expert, Dr. Polish, states, "There is no universal meaning for the term 'object.'" (D.I. 177, Ex. 6 at ¶¶ 216, 223, 228). However, the question of indefiniteness is not whether a term has a universal meaning, but whether a person of ordinary skill in the art would understand the term with "reasonable certainty" in light of the claims and the specification.

The claim language and the specification of the patents-in-suit informs a person of ordinary skill in the art of the meaning of "objects" with the "reasonable certainty" required by § 112. It is clear that "objects" refers to data. While the range of "data" covered by the term may be broad, a broadly-defined term does not make the term indefinite. However, given the dispute as to the meaning of "objects," the Court will adopt the construction put forth by the parties: "data representing information about component(s) or device(s)." (D.I. 207). This construction gives effect to the plain meaning of the term in the context of the patents. The Court DENIES Defendant's Motion to find the term "objects" indefinite.

## B. Standing

Defendant alleges that Plaintiff Alarm.com does not have standing to sue as a co-plaintiff, as it is neither the owner of the patents nor has it shown it holds an exclusive license. (D.I. 176 at 19). In response, Plaintiffs assert that Plaintiff Alarm.com does have standing to sue and there is a dispute of material fact as to whether Plaintiff Alarm.com is an implied exclusive licensee. (D.I. 182 at 13). For the following reasons, I determine that Plaintiff Alarm.com does have standing to sue.

6

"[T]he touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right to suffer legal injury." *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010). In determining questions of legal standing, the Supreme Court has held, "A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474-75 (2003). Therefore, a parent corporation does not have de facto standing to assert claims for monetary relief for infringement of a wholly-owned subsidiary's patent. The parent corporation must show that it has an exclusive license in the asserted patents. *Spine Sols., Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1317-18 (Fed. Cir. 2010), *abrogated on other grounds by Halo Elecs., Inc. v. Pulse Elecs.*, 136 S. Ct. 1923 (2016). A parent corporation, however, may have standing to pursue equitable relief where the parent corporation is the equitable owner of the patents-in-suit. *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1580 (Fed. Cir. 1991); *Hologic, Inc. v. Minerva Surgical, Inc.*, 163 F. Supp. 3d 118, 121-22 (D. Del. 2016).

"To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995). "[A]n exclusive license need not be in writing for the exclusive licensee to have standing to sue with the patentee as a co-plaintiff." *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 288 F. App'x 697, 705 (Fed. Cir. 2008). A promise of exclusivity is generally "the right to exclude others from making, using, or selling the patented invention." *Id.* An exclusive licensee does not need to "be the *only* party with the ability to license the patent." *WiAV*, 631 F.3d at 1266.

7

It is undisputed that there is no express exclusive license from Plaintiff ICN to Plaintiff Alarm.com. Therefore, to determine whether Plaintiff Alarm.com has legal standing, the Court must ask whether it has an implied exclusive license. There is no dispute between the parties that Plaintiff ICN is wholly-owned by Plaintiff Alarm.com. The President of both Alarm.com and ICN declared that "ICN was set-up as a holding company" and does not "have an existence separate from Alarm.com, in that Alarm.com controls all of ICN's business." (D.I. 186 ¶ 3).[2] He also declared, "Alarm.com has the exclusive right to grant (or not to grant) any licenses to the patents-in-suit." (*Id.*). This statement is also supported by non-testimonial evidence. Plaintiff Alarm.com "has operated as an exclusive licensee, distributing products made pursuant to the patents-in-suit and seeking to enforce its rights under the patents." *Aspex*, 288 F. App'x at 706. Alarm.com has participated in all licensing agreements for the patents-in-suit. The license agreement with iControl and Comcast refers to Plaintiff Alarm.com as the grantor of the license to Comcast and is signed by representatives of both Plaintiffs. (D.I. 183 at 125 ¶ 1.71, 128 ¶ 3.1, 150). The settlement and license agreement with Honeywell both refers to Plaintiff Alarm.com as the grantor of the license of the patents-in-suit (*id.* at 156) and as the "exclusive and sole owner of all right, title, and interest in and to the Licensed Patents." (*Id.* at 159). This agreement was solely signed by Plaintiff Alarm.com without any signature on behalf of Plaintiff ICN. (*Id.* at 165).

There are no disputed facts underlying the determination of whether Plaintiff Alarm.com has an implied exclusive license from Plaintiff ICN. The undisputed facts clearly indicate that

---

[2] Defendant argues that these statements were introduced by Plaintiff to create a material dispute of fact because the statements are factually inconsistent with Mr. Trundle's deposition. (D.I. 208 at 31:10-12). The Court disagrees. Mr. Trundle's declaration merely expands on his more casual statements made at deposition but is not clearly inconsistent with his deposition statements. Therefore, the declaration does not create a dispute of material fact as Defendant has not introduced any evidence contradicting the declaration.

8

there was such an implied exclusive license. As such, Plaintiff Alarm.com has standing to sue for both equitable and monetary relief. Defendant's Motion for Summary Judgment on Plaintiff Alarm.com's standing is DENIED.

## C. Lost Profits

Defendant asserts that even if Plaintiff Alarm.com has standing to sue for lost profits, it cannot pursue its *own* lost profits prior to Plaintiff ICN's acquisition of the patents-in-suit. (D.I. 176 at 22). Plaintiffs argue that Plaintiff Alarm.com may seek its own lost profits from the date the Asset Purchase Agreement was signed. (D.I. 182 at 29). The parties agree that there are no material factual disputes regarding this issue. (D.I. 207). For the following reasons, I find that Plaintiff Alarm.com may not recover its *own* lost profits prior to March 8, 2017, the date that Plaintiff ICN acquired the patents-in-suit.

A plaintiff may recover pre-assignment damages, including lost profits, where "the assignment of a patent is coupled with an assignment of a right of action for past infringements." *Arachnid*, 939 F.2d at 1579 n.7. Because "[i]nfringement . . . harms only the owner of the patent at the time of the infringing act," a patentee may only assign the right to recovery for the injury it suffered at the time of the infringement. *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996). However, whether a plaintiff "can recover *its own* purported pre-Assignment lost profits damages, apart from any damages that were assignable (and assigned)" is a different question. *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, 198 F. Supp. 3d 366, 379 (D. Del. 2016). Plaintiff asserts that the *Minco* case, where the court allowed Minco to recover its own pre-assignment lost profits, dictates that Plaintiff Alarm.com be allowed to recover its pre-assignment lost profits. However, the court in *Minco* never addressed the specific issue of what pre-assignment profits were available; the issue was not raised. 95 F.3d at 1119 (defendant only

9

challenged district court's lost profit finding on issue of non-infringing alternatives).

Additionally, this Court find the rationale in *W.L. Gore* that a party may "only assign damages claims it *did* have" convincing. 198 F. Supp. at 380. In that case, the patent assignor, GEH, was a non-practicing, independent subsidiary of the patent assignee, Gore. *Id.* The court determined that pre-assignment, "GEH had no legal basis to recover lost profit damages arising from Gore's lost sales" and therefore, Gore could not recover its own lost profits damages. *Id.*

Here, it is undisputed that the Patent Assignment Agreement explicitly assigned Plaintiff ICN the right to seek damages for past infringement. (D.I. 177, Ex. 10 ¶ 1(c)). Through its implied exclusive license from ICN, Alarm.com also enjoys that right. However, iControl could not have assigned the right to Plaintiff Alarm.com's pre-assignment lost profits damages because iControl had no legal rights to Plaintiff Alarm.com's sales. Plaintiff Alarm.com's pre-assignment sales of products embodying the patents-in-suit had no positive economic impact on iControl. In fact, before this suit was instituted, iControl sued Alarm.com for infringement of these same patents. Therefore, Plaintiffs cannot seek their own purported pre-assignment lost profits damages, as the right to those damages could not have been assigned by iControl.

Moreover, Plaintiffs' argument that the Asset Purchase Agreement gave Plaintiff Alarm.com sufficient exclusionary rights such that it can now recover its own lost profits for that period is unavailing. The Asset Purchase Agreement merely settled that Plaintiff Alarm.com would gain exclusionary rights in the patent at some future time. Plaintiffs point to the provision prohibiting iControl from settling this suit. However, a contractual provision that the patentee not settle a suit for damages which will, at some point in the future, be assigned to the Plaintiff is not sufficient. The Purchase Agreement did not grant Plaintiffs the right to immediately begin enforcing exclusionary rights. It did not entitle Plaintiffs to join this lawsuit at that time.

10

Plaintiffs were only permitted to replace iControl once the assignment of the patents-in-suit was complete. The prohibition on settlement merely allowed Plaintiffs to protect its future right to pursue iControl's lost profits—it did not create a new right for Plaintiffs to seek their own lost profits for the period that the sale was pending. Thus, as a matter of law, Plaintiff Alarm.com may not recover its own lost profits before March 7, 2018. Defendant's Motion for Summary Judgment as to pre-assignment lost profits is GRANTED.

## D. Indirect Infringement Liability

Defendant argues that there is no evidence sufficient to create a triable issue of fact that Defendant either had pre-suit knowledge of the patents-in-suit or was willfully blind to the existence of the patents. (D.I. 176 at 28). Plaintiffs, in response, argue that there are material disputed facts as to whether Defendant was willfully blind. (D.I. 182 at 34). For the following reasons, I determine that there is no pre-suit liability for indirect infringement of the patents-in-suit.

Liability for indirect infringement requires that the infringer have knowledge of or be willfully blind to both the patents and infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). Patentees may not "collect[] damages related to indirect infringement for any pre-knowledge conduct." *Walker Digital LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 565 (D. Del. 2012). Where pre-suit knowledge of the patents or infringement cannot be shown, a patentee may still recover pre-suit damages if the patentee can show that the infringer was willfully blind to the patent or infringement. "[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have known the critical facts." *Global-Tech*, 563 U.S. at 769. "Willful blindness . . . surpasses recklessness and negligence. . . . [A] reckless defendant is one who merely knows of a

11

substantial and unjustified risk of wrongdoing, and a negligent defendant is one who should have known of a similar risk but, in fact, did not." *Id.* Therefore, a defendant is not willfully blind if it merely "should have known" of the risk of indirect infringement.

Plaintiffs point to three pieces of evidence: 1) testimony of iControl's former CEO Paul Dawes that he believed Defendant was aware of the patents given how closely Defendant copied what iControl was doing (D.I. 183, Ex. 5 at 104:9-105:10); 2) Defendant had access to an embodiment of the '931, '619, and '844 patents between 2008 and 2009 (D.I. 182 at 34); and 3) Defendant's CEO "admitted that he knew of the 2013 lawsuit between Alarm.com and iControl involving the '931, '619, and '844 patents" and did nothing to investigate the lawsuit. (*Id.* at 34-35).

This evidence at most frames Defendant as a "reckless or negligent defendant—not a willfully deliberate one." *Apeldyn Corp. v. AU Optronics Corp.*, 831 F. Supp. 2d 817, 831 (D. Del. 2011). First, testimony from a third-party with no direct "knowledge of what [Defendant] did or didn't do" that the Defendant "should have known" of the patents-in-suit is not enough.[3] (D.I. 198 at 15, 15 n.3). Even if this evidence were more than mere suspicion, it would only show negligence—that the Defendant should have known of the patents, not that the Defendant was willfully blind to the existence of the patents. It cannot be the case that after the Supreme Court rejected "should have known" as sufficient to prove indirect infringement that proof of "should have known" is sufficient to show "willful blindness." Second, the access to a product embodying the '931, '619, and '844 patents is also insufficient to indicate that Defendant willfully blinded themselves to the existence of a patent. The earliest issued patent of these three

---

[3] It also would be inadmissible. It is not based on personal knowledge and it is not offered as expert witness testimony.

patents issued in 2011. Having access to a product two to three years before the patent issued cannot create an inference of willful blindness absent additional evidence.

Finally, Defendant's awareness that a competitor is being sued for infringement and a failure to investigate that lawsuit is not enough to show willful blindness. While Plaintiffs at oral argument stated that the product at issue in that lawsuit was "incredibly similar" to the Defendant's own product, this cannot raise an inference of willful blindness. Like in *Apeldyn*, where the defendant "would not initiate the collection of patents issued to other companies" with competing technology, 831 F. Supp. 2d at 831 (cleaned up), here, the mere fact that a competitor with similar technology was sued for infringement cannot trigger a duty to investigate the lawsuit or otherwise be held to be willfully blind. For willful blindness to exist, "the defendant must subjectively believe that there is a high probability that" the induced acts are infringing. *Global-Tech*, 563 U.S. at 769. The evidence Plaintiffs present does not permit this conclusion. Therefore, Defendant's Motion for Summary Judgment as to pre-suit liability for induced infringement is GRANTED.

**IV. Conclusion**

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment as to pre-assignment lost profits and pre-suit liability for indirect infringement of the patents-in-suit and DENIES Defendant's Motion as to indefiniteness of the term "objects" and Plaintiff Alarm.com's standing.

An accompanying order will be entered.

13