IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALARM.COM, INC. and ICN
ACQUISITION, LLC,

    Plaintiffs;

v.

SECURENET TECHNOLOGIES LLC,

    Defendant.

Civil Action No. 15-807-RGA

MEMORANDUM OPINION

Mary B. Matterer and Kenneth L. Dorsney, MORRIS JAMES LLP, Wilmington, DE; Ian R. Liston, WILSON SONSINI GOODRICH & ROSATI, P.C., Wilmington, DE; James C. Yoon, Ryan R. Smith (argued), Christopher D. Mays, and Mary A. Procaccio-Flowers, WILSON SONSINI GOODRICH & ROSATI, Palo Alto, CA, attorneys for Plaintiffs.

Jack B. Blumenfeld and Stephen J. Kraftschik, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Erik B. Milch and Frank Pietrantonio, COOLEY LLP, Reston, VA; Rose Whelan (argued), and Naina Soni, COOLEY LLP, Washington, DC, attorneys for Defendant.

January 6, 2019

*signature* 
**ANDREWS, U.S. DISTRICT JUDGE:**

Currently pending before the Court is Defendant's Motion to Exclude Opinions of Brett Reed. (D.I. 173). The parties have fully briefed the issues. (D.I. 174, 187, 197). The Court heard oral argument on December 3, 2018. (D.I. 208). After considering the parties' briefing and argument, the Court GRANTS-IN-PART and DENIES-IN-PART Defendant's Motion.

## I. Background

Plaintiffs' predecessor-in-interest iControl Networks, Inc. filed this suit against Defendant SecureNet Technologies LLC on September 11, 2015. (D.I. 1). The suit asserted United States Patent Nos. 7,855,635 ("the '635 patent"), 8,473,619 ("the '619 patent"), 8,478,844 ("the '844 patent"), and 8,073,931 ("the '931 patent"). (D.I. 1 ¶¶ 3-7). The patents-in-suit are generally related to integrating an alarm system with an external security network and other interfaces. ('635 patent, abstract; '619 patent, abstract; '844 patent, abstract; '931 patent, abstract).

On June 23, 2016, Plaintiffs Alarm.com and ICN Acquisition (collectively "Plaintiffs") entered into an Asset Purchase Agreement with iControl Networks to purchase the patents-in-suit. (D.I. 177 at 209). Plaintiff ICN is a wholly-owned subsidiary of Plaintiff Alarm.com. (D.I. 186 ¶ 2). On March 8, 2017, Plaintiff ICN completed its acquisition of the patents-in-suit. (D.I. 177 at 209, 255). On March 29, 2017, the Court substituted Alarm.com and ICN for iControl as Plaintiffs in this action. (D.I. 28). Defendant filed a Motion to Exclude Opinions of Brett Reed on October 30, 2018. (D.I. 173).

## II. Legal Standard

Federal Rule of Evidence 702 sets out the requirements for expert witness testimony and states:

1

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Third Circuit has explained:

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit. Qualification refers to the requirement that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that a broad range of knowledge, skills, and training qualify an expert. Secondly, the testimony must be reliable; it must be based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation"; the expert must have "good grounds" for his or her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity. Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact. The Supreme Court explained in *Daubert* that Rule 702's "helpfulness" standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.
>
> By means of a so-called "*Daubert* hearing," the district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury. *See Daubert* ("Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a) of the Federal Rules of Evidence whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.").

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404–05 (3d Cir. 2003) (cleaned up).[1]

## III. Discussion

### A. Mr. Reed's Lost Profits Opinion

Defendant requests that the Court exclude 1) the entirety of Mr. Reed's lost profits opinion due to defects in his analysis of the manufacturing and marketing prong of *Panduit*, or 2) Mr. Reed's opinion as to Plaintiff Alarm.com's entitlement to its lost profits prior to Plaintiff ICN's acquisition of the patents-in-suit. (D.I. 174 at 7). Plaintiffs respond that Mr. Reed's lost profits opinion should not be excluded because 1) Defendant's challenge to Mr. Reed's *Panduit* analysis goes to the weight of the evidence and 2) his opinion merely addresses alternative lost profits scenarios without purporting to determine the date from which Plaintiff Alarm.com is legally entitled to claim lost profits. (D.I. 187 at 12-13).

#### i. Marketing and Manufacturing Prong of *Panduit*

Defendant asserts that Mr. Reed improperly assessed the marketing and manufacturing prong of *Panduit* by failing to consider the constraints on third-party dealers in converting customers from SecureNet to Alarm.com. (D.I. 174 at 7-8). Further, Defendant asserts that Mr. Reed's report is internally inconsistent in assessing these barriers. (*Id.*). Plaintiffs assert that Defendant's challenge goes to the weight of Mr. Reed's opinion. (D.I. 187 at 13-14).

I agree with Plaintiffs. Defendant's challenge to Mr. Reed's assessment of the marketing and manufacturing prong goes to the weight and credibility of his opinion, not its admissibility. Therefore, the Court will not exclude Mr. Reed's lost profits opinion in its entirety. Defendant

---

[1] The Court of Appeals wrote under an earlier version of Rule 702, but the recent amendments to it were not intended to make any substantive change.

3

may challenge Mr. Reed's conclusions at trial through cross-examination and the presentation of contrary evidence.

### ii. Lost Profits Before March 8, 2017

As explained in the summary judgment opinion, Plaintiff Alarm.com, as a matter of law, may not recover lost profits before the date Plaintiff ICN acquired the patents-in-suit. (D.I. 214 at 9-11). To the extent Mr. Reed offers opinions that are inconsistent with the starting date of March 8, 2017 for lost profits recovery, those opinions are excluded.

## B. Mr. Reed's Opinions on Secondary Considerations

### i. Commercial Success

Defendant asks the Court to exclude Mr. Reed's commercial success opinion "because he does not appropriately address the nexus between the alleged commercial success and the patented invention." (D.I. 174 at 8). Specifically, Defendant argues that Mr. Reed's identified nexus was known in the prior art and therefore cannot provide the nexus required by law. (*Id.*). Plaintiffs argue that Mr. Reed has identified and addressed the required nexus, and therefore Defendant's challenge goes to the weight of the opinion, not admissibility. (D.I. 187 at 16).

"[A] nexus must exist between the commercial success and the claimed invention" for commercial success to be relevant. *Tokai Corp. v. Easton Enterprises, Inc.*, 632 F.3d 1358, 1369 (Fed. Cir. 2011); *see also Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success . . . is only significant if there is a nexus between the claimed invention and the commercial success."). "[T]he patentee in the first instance bears the burden of coming forward with evidence sufficient to constitute a prima facie case of the requisite nexus." *Demaco Corp. v. G. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988). "[T]here is a presumption of nexus for objective considerations when the patentee

4

shows that the asserted objective evidence is tied to a specific product and that product 'is the invention disclosed and claimed in the patent.'" *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1329 (Fed. Cir. 2016) (quoting *J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997)). "If commercial success is due to an element in the prior art, no nexus exists." *Tokai*, 632 F.3d at 1369-70; *see also Ormco*, 463 F.3d at 1311-12 ("if the feature that creates the commercial success was known in the prior art, the success is not pertinent"). The patentee, at this stage, "is not required to rebut the possibility that the sales of the accused products are attributable to other features." *Exelis Inc. v. Cellco Partnership*, 2012 WL 6043494, at *14 (D. Del. Nov. 6, 2012) (citing *Demaco*, 851 F.2d at 1392-93).

Defendant argues that the stated nexus is legally insufficient because it existed in the prior art.[1] This, however, is a more appropriate inquiry for summary judgment, not for a *Daubert* motion. *See Ormco*, 463 F.3d at 1311-12. Here, Mr. Reed stated in his opinion, "The products covered by the [three] patents-in-suit have experienced commercial success." (D.I. 177-1 at 137). Specifically, Mr. Reed points to two products covered by the patents-in-suit, "the ADT Pulse product (based on iControl's Connect platform) and Comcast's launch of the Xfinity Home Security product (based on iControl's Converge platform)." (*Id.* at 38). As Mr. Reed notes, the ADT Pulse product experienced rapid growth from 12,000 subscribers at the end of 2010 to just under 2 million subscribers at the end of 2016. (*Id.* at 140). Furthermore, Mr. Reed notes that iControl as a company did not become successful until after it introduced the patented technology in its Connect and Converge platforms. (*Id.* at 138-39). Similarly, Mr. Reed demonstrates that Plaintiff Alarm.com's revenue from its software as a service (SaaS) products

---

[1] Plaintiffs dispute that any prior art exists. (D.I. 187 at 12).

and licenses have increased since it obtained a license to the patents-in-suit in January 2014. (*Id.* at 142-43).

Mr. Reed describes the nexus between commercial success and the asserted patents as follows:

> [W]e have the ability to compare the economic performance of services that embody the patented technology . . . with basic interactive home security services that did not provide the ability to integrate security services with interactive video and home automation capability. Those previous security services that could not provide an upgrade path to video or home automation did not survive in the marketplace, or at best, demonstrated stagnant economic performance when other services that embody the patented technology demonstrated significant growth and/or market acceptance.

(*Id.* at 135). Later in the report, Mr. Reed summarizes the nexus as "the integration of video and/or home automation services with security services." (*Id.* at 136). Plaintiffs at oral argument stated that this description of the nexus in Mr. Reed's opinion was the result of Mr. Reed "confer[ring] and rel[ying] upon the technical expert to help him understand or formulate a shorthand identification" of the nexus. (D.I. 208 at 91:19-21). This is consistent with Mr. Reed's footnote stating, "I understand that the '619, '844, and '931 patents each relate to this nexus regarding integration of security services with video and/or home automation and the success of such security services that include an efficient upgrade path for integrated interactive capability." (D.I. 177-1 at 136 n.1). Mr. Reed also specifically points to the patents-in-suit enabling "additional advanced interactive functions associated with video cameras, doorbells and other devices with z-wave capability compared to systems with basic interactive functions" as part of his commercial success analysis. (*Id.* at 146).

I am not convinced at this juncture that Mr. Reed's opinion proposes a legally insufficient nexus. Mr. Reed's shorthand identification of the nexus does not exclude the other relevant

6

discussions of the patented technology and its relation to the patented products' commercial success. Moreover, it is not clear that the prior art cited by Defendant encompasses Mr. Reed's emphasis on efficient upgrade paths or the advanced interactive functions with devices with z-wave capability. Furthermore, Defendant's contention that Mr. Reed's opinion is based on insufficient facts and data because he failed "to consider the plethora of prior art that included the feature he relies upon as an alleged nexus" is an issue that goes to the weight and credibility of the testimony, not its admissibility. (D.I. 174 at 14). At trial, Defendant can challenge Mr. Reed's opinions through cross-examination and the presentation of contrary evidence. The Court is not persuaded that it should exclude Mr. Reed's testimony.

### ii. Mr. Reed's Opinion on Failure of Others

Defendant asks the Court to exclude Mr. Reed's "failure of others" opinion on the basis that it is not relevant to nonobviousness. (D.I. 174 at 8). Plaintiffs respond that Defendant's challenge to this opinion is merely an attack on the weight of Mr. Reed's testimony, rather than its admissibility. (D.I. 187 at 19).

I agree with Defendant. The relevant analysis for this factor is "the failure of others to find a solution to the problem which the patent[s] in question purport[] to solve." *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1578 (Fed. Cir. 1991) (internal quotation omitted). This factor is intended to "show indirectly the presence of a significant defect in the prior art while serving as a simulated laboratory test of the obviousness of the solution to a skilled artisan." *In re Cyclobenzaprine Hydrochloride*, 676 F.3d 1063, 1082 (Fed. Cir. 2012) (cleaned up). Mr. Reed's analysis focuses solely on the irrelevant failure of others to *economically* compete in the market, not their technological failure. Moreover, Mr. Reed cannot offer an opinion as to the technical failure of others because he is not a technical expert. The Court therefore concludes

7

that Mr. Reed's "failure of others" analysis shall be excluded as to the "failure of others" factor but may be used for the licensing factor of secondary considerations.[2]

### iii. Mr. Reed's Opinion on Copying

Defendant requests that Mr. Reed's "copying" opinion "be excluded because it is not based on sufficient facts." (D.I. 174 at 8). Plaintiffs argue that Defendant's challenge goes to weight of Mr. Reed's opinion, not its admissibility. (D.I. 187 at 21). Defendant is correct. "Not every competing product that arguably falls within the scope of a patent is evidence of copying." *Weyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010). "[C]opying requires evidence of efforts to replicate a specific product," *id.*, and the replicated product must be shown to be an embodiment of the claims. *See Amazon.com v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (Fed. Cir. 2001).

The evidence cited and relied upon by Mr. Reed in his copying opinion is insufficient. At most, the evidence relied on by Mr. Reed demonstrates that Defendant had products with similar features to those of iControl and Plaintiff Alarm.com. There is no evidence cited by Mr. Reed of efforts to replicate a specific product. The email referencing a security dealer website does not identify a specific product to emulate; it merely includes a website link. Further, Defendant's access to Plaintiff Alarm.com software through COO Bill Rose only arose when he joined Defendant in 2015. Plaintiffs have pointed to no evidence showing that this access resulted in changes to Defendant's products. Finally, the specific email relating to Apple Watch applications cannot be evidence of copying because Defendant has not released an Apple Watch

---

[2] One aspect of the "failure of others" opinion was that Telular took a license to the patents-in-suit associated with the Connect platform. (D.I. 208 at 94:9-11; D.I. 177-1 at 264-65). The Plaintiffs at oral argument conceded that "it probably falls better into the licensing category for secondary consideration and . . . we probably would just limit it to that if that resolves it." (D.I. 208 at 100:13-16).

application. Access to a product that was never developed cannot be evidence of a Defendant's copying of other technology as this would defeat the specific product requirement of copying. Therefore, Mr. Reed's opinion on copying is based on insufficient facts and is excluded.[3]

### iv. Mr. Reed's Opinion on Praise by Others

Defendant asks the Court to exclude Mr. Reed's "praise by others" opinion[4] because he "fails to provide clear evidence" and "fails to establish the requisite nexus between any praise and the patented invention." (D.I. 174 at 8). Plaintiffs respond that Defendant's challenge goes to the weight of Mr. Reed's opinion. (D.I. 187 at 20). "Evidence that the industry praised a claimed invention or a product that embodies the patent claims weighs against an assertion that the claimed invention would have been obvious." *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1053 (Oct. 7, 2016). "[A]n expert must establish a nexus between industry praise and the patented *technology*." *Cot'n Wash, Inc. v. Henkel Corp.*, 56 F. Supp. 3d 626, 650 (D. Del. 2014).

The evidence relied on by Mr. Reed in this section of his report does not relate to the patented technology. At most, Mr. Reed's opinion establishes that there was industry praise for Alarm.com as a company, not for the asserted patents. This section relies on a significant amount of testimony from Mr. Dawes from iControl and Mr. Trundle from Alarm.com. As the previous patent owner and the current exclusive licensee of the patents, their commentary cannot qualify as "praise by others." The only evidence cited by Mr. Reed from outside industry sources are a 2012 assessment by ABI Research, a suggestion by the manufacturer of 2GIG

---

[3] I am also doubtful that Mr. Reed's expertise as a damages expert qualifies him to offer testimony on "copying."
[4] The Court notes that Mr. Reed combined his analysis of copying and praise by others in his report. The Court will address the evidence here that it believes was intended by Mr. Reed to support an opinion that there was praise by others.

9

panels to Telular that Telular should approach iControl about using its patents, and a June 2015 article in SFM Magazine discussing SentryNet's partnership with Defendant SecureNet. (D.I. 177-1 at 153-55, 160). However, the ABI Research assessment does not appear to reflect Mr. Reed's stated nexus; the quoted language merely identifies the "software as service (SaaS) HAS offerings," the ability to "support many large deployments," and "benefiting from early and successful partnerships and system deployments." (D.I. 177-1 at 153, 153 n.49). This does not appear to praise anything specific about the technology used by Plaintiff Alarm.com or iControl. Further, Mr. Reed fails to connect 2GIG's suggestion to the patents-in-suit. As such this suggestion cannot be relevant. Additionally, the quoted portion of the SFM article is merely a description of the technology. There is no mention of praise for the technology in the article. Therefore, Mr. Reed's praise by others opinion is excluded as it is based on insufficient facts.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion to Exclude Opinions of Brett Reed is GRANTED-IN-PART as to the lost profits opinion, GRANTED as to the failure of others, copying, and praise by others opinions, and DENIED as to the commercial success opinion.

An accompanying order will be entered.