IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALARM.COM, INC. and | ) | |
| ICN ACQUISITION, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-807 (RGA) |
| | ) | |
| SECURENET TECHNOLOGIES LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## FINAL JURY INSTRUCTIONS

i

Table of Contents

1. GENERAL INSTRUCTIONS ................................................................................1

   1.1 INTRODUCTION ...............................................................................1

   1.2 JURORS' DUTIES .............................................................................1

   1.3 BURDENS OF PROOF ........................................................................2

   1.4 EVIDENCE DEFINED .........................................................................3

   1.5 CONSIDERATION OF EVIDENCE ........................................................4

   1.6 DIRECT AND CIRCUMSTANTIAL EVIDENCE .......................................4

   1.7 CREDIBILITY OF WITNESSES ...........................................................5

   1.8 DEMONSTRATIVE EXHIBITS .............................................................6

   1.9 USE OF NOTES ................................................................................6

2. THE PARTIES AND THEIR CONTENTIONS .......................................................7

   2.1 THE PARTIES ..................................................................................7

   2.2 SUMMARY OF CONTENTIONS ...........................................................7

3. PATENT CLAIMS ...........................................................................................8

   3.1 THE ROLE OF THE CLAIMS IN A PATENT ...........................................8

   3.2 INDEPENDENT AND DEPENDENT CLAIMS ..........................................8

   3.3 CONSTRUCTION OF CLAIMS .............................................................9

4. INFRINGEMENT .........................................................................................10

   4.1 INFRINGEMENT GENERALLY...........................................................10

   4.2 INFRINGEMENT .............................................................................11

   4.3 INFRINGEMENT — INFRINGEMENT OF MEANS PLUS FUNCTION TERM........11

   4.4 INFRINGEMENT — DIRECT INFRINGEMENT: MAKING AND USING A
       SYSTEM.........................................................................................13

   4.5 INFRINGEMENT — INDIRECT INFRINGEMENT ..................................14

       4.5.1 INFRINGEMENT — INDIRECT INFRINGEMENT — ACTIVE
             INDUCEMENT........................................................................14

       4.5.2 INFRINGEMENT — INDIRECT INFRINGEMENT —
             CONTRIBUTORY INFRINGEMENT ............................................14

   4.6 WILLFUL INFRINGEMENT ...............................................................15

5. INVALIDITY — GENERALLY ........................................................................16

   5.1 PRIOR ART....................................................................................16

       5.1.1 PRIOR ART CONSIDERED OR NOT CONSIDERED BY THE
             USPTO .................................................................................16

   5.2 OBVIOUSNESS ...............................................................................17

ii

6.   D A M A G E S .............................................................................................................19

   6.1    DAMAGES — GENERALLY ...............................................................................19

          6.1.1   CALCULATING DAMAGES IN CASES OF INDUCEMENT OR
                CONTRIBUTORY INFRINGEMENT .................................................20

          6.1.2   LOST PROFITS — "BUT FOR" TEST..................................................21

          6.1.3   LOST PROFITS — DEMAND ..............................................................22

          6.1.4   LOST PROFITS — NONINFRINGING SUBSTITUTES —
                ACCEPTABILITY.................................................................................22

          6.1.5   LOST PROFITS — NONINFRINGING SUBSTITUTES —
                AVAILABILITY...................................................................................23

          6.1.6   LOST PROFITS — CAPACITY ...........................................................23

          6.1.7   LOST PROFITS — AMOUNT OF PROFIT...........................................24

          6.1.8   LOST PROFITS — MARKET SHARE ..................................................24

   6.2    REASONABLE ROYALTY — ENTITLEMENT .........................................24

          6.2.1   REASONABLE ROYALTY AS A MEASURE OF DAMAGES...............25

          6.2.2   FACTORS FOR DETERMINING REASONABLE ROYALTY.................26

          6.2.3   REASONABLE ROYALTY — APPORTIONMENT .....................................28

          6.2.4   REASONABLE ROYALTY — ENTIRE MARKET VALUE RULE..............28

   6.3    DATE OF COMMENCEMENT OF CLAIMED DAMAGES ...................................29

7.   DELIBERATION AND VERDICT ......................................................................29

   7.1    DELIBERATION AND VERDICT — INTRODUCTION .........................................29

   7.2    UNANIMOUS VERDICT ......................................................................30

   7.3    DUTY TO DELIBERATE ......................................................................31

   7.4    SOCIAL MEDIA ......................................................................31

   7.5    COURT HAS NO OPINION......................................................................32

1.    **GENERAL INSTRUCTIONS**

1.1    **INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say. In following my instructions you must follow all of them and not single out some and ignore others. They are all important.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

1.2    **JURORS' DUTIES**

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on any given issue. It is my job to

instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

## 1.3     BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

This is a civil case in which Alarm.com, Inc. and ICN Acquisition LLC (whom I will refer to as "Alarm.com" or "Plaintiffs") are accusing SecureNet Technologies, LLC (whom I will refer to as "SecureNet") of patent infringement. In addition to denying that infringement for some of the Asserted Claims, SecureNet asserts that some of the Asserted Claims are invalid.

Plaintiffs have the burden of proving patent infringement by what is called a preponderance of the evidence. That means Plaintiffs have to produce evidence which, when considered in light of all of the facts, leads you to believe that the infringement is more likely true than not. To put it differently, if you were to put Alarm.com's and SecureNet's evidence on the opposite sides of a scale, the evidence supporting Alarm.com's claims would have to make the scales tip slightly on Alarm.com's side. SecureNet has the burden of proving that the Asserted Claims are invalid by what is called clear and convincing evidence. Clear and

convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

**1.4**    **EVIDENCE DEFINED**

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, deposition testimony that was presented to you, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and any other evidence that I have judicially noticed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them

influence your decision in any way. Sometimes testimony and exhibits are received only for a limited purpose. When I give instructions regarding that limited purpose, you must follow it.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

## 1.5    CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider the evidence in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## 1.6    DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two kinds of evidence: direct evidence and circumstantial evidence. Direct evidence is direct proof of a fact, such as the testimony of an eyewitness. For example, if a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is indirect proof of a fact, i.e., proof of facts from which you may infer or conclude that other facts exist. For example, if someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

The law makes no distinction between the weight that you should give to either direct or circumstantial evidence, but simply requires that you find facts from all the evidence in the case.

You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## 1.7    CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you cannot do this, then it is your duty and privilege to believe the portions of testimony that, in your judgment, are most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at the trial. You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other

5

things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses, including expert witnesses.

## 1.8   DEMONSTRATIVE EXHIBITS

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations. The other exhibits (including charts and animations presented by attorneys and witnesses) were offered to help illustrate the testimony of the various witnesses. These illustrations, called "demonstrative exhibits," have not been admitted as evidence, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

## 1.9   USE OF NOTES

You may use notes taken during trial to assist your memory. However, you should use caution in consulting your notes. There is always a tendency to attach undue importance to matters that you have written down. Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence,

and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

**2.      THE PARTIES AND THEIR CONTENTIONS**

**2.1     THE PARTIES**

I will now review for you the parties in this action, and the positions that you will have to consider in reaching your verdict. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

The parties are Alarm.com, Inc. and ICN Acquisition, LLC, who are the plaintiffs, and SecureNet Technologies, LLC, the Defendant.

ICN Acquisition owns the three U.S. patents that are at issue in this case, which I will refer to individually as the '931 patent, the '619 patent, and the '844 patent.  I will refer to them together as the Asserted Patents.

**2.2     SUMMARY OF CONTENTIONS**

Plaintiffs allege that SecureNet directly and/or indirectly infringes Claims 1 and 9 of the '931 patent; Claims 1 and 55 of the '619 patent; and Claim 48 of the '844 patent.

Plaintiffs allege that SecureNet's infringement of the Asserted Patents was and is willful.

SecureNet denies that its products or services infringe Claims 1 and 9 of the '931 patent, Claim 48 of the '844 patent, or Claims 1 and 55 of the '619 patent.

SecureNet also denies that it has encouraged its customers or end users to infringe the asserted claims.

SecureNet contends that the asserted claims of the '931 patent are invalid because the inventions described therein are found in the prior art.

If any of the Asserted Claims has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Plaintiffs to compensate them for the infringement.

## 3.     PATENT CLAIMS

### 3.1     THE ROLE OF THE CLAIMS IN A PATENT

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

### 3.2     INDEPENDENT AND DEPENDENT CLAIMS

Claims can be stated in two different ways in a patent. The first way a claim can be stated is in the form of an "independent claim." An independent claim does not refer to any other claim of the patent. An independent claim is read alone to determine its scope.

In this case, Claim 1 of the '931 patent, Claim 1 of the '619 patent, and Claim 48 of the '844 patent are independent claims. An "independent claim" sets forth all of the requirements that must be met in order for an accused system or method to be covered by that claim.

The second way a claim can be stated is in the form of a dependent claim. A dependent claim does not itself recite all of the requirements of the claim but refers to another claim or claims for some of its requirements. In this way, the claim "depends" on another claim or claims. A dependent claim incorporates all of the requirements of the claims to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers.

In this case, Claim 9 of the '931 patent and Claim 55 of the '619 patent are dependent claims. An accused product or method is only covered by, and therefore infringes, a dependent claim if the accused product meets all of the requirements of both the dependent claim and the claims to which the dependent claim refers. Because a dependent claim incorporates all of the features of the independent claims it refers to, if you find that an independent claim is not infringed, then the claims that depend on that independent claim cannot be infringed. Similarly, if you find that an independent claim is not obvious, then the claims that depend on that independent claim are also not obvious.

## 3.3    CONSTRUCTION OF CLAIMS

The law says that it is the Court's duty to define the terms of the patent's claims. I have already defined the meaning of some of the words of the Asserted Claims in this case. These definitions have been provided to you on a chart in your juror notebooks.

You must accept my definition of these words in the Asserted Claims as correct. You must use the definitions I give you for each claim to make your decisions as to whether the claim is infringed or invalid. You must ignore any different definitions used by the witnesses or the attorneys. You should not take my definition of the language of the Asserted Claims as an

9

indication that I have a view regarding how you should decide the issues that you are being asked to decide, namely infringement and invalidity. These issues are yours to decide.

When I have not defined a term, you should give it its ordinary meaning.

## 4.    INFRINGEMENT

### 4.1    INFRINGEMENT GENERALLY

Patent law provides that any person or business entity which makes or uses, without the patent owner's permission, any product, apparatus or method covered by at least one claim of a United States patent before the patent expires, infringes the patent. A patent owner may enforce his right to exclude others from making or using the patented invention by filing a lawsuit for patent infringement.

In this case, there are three possible ways that a claim may be infringed.  The three types of infringement are called: (1) direct infringement; (2) active inducement; and (3) contributory infringement.   Active inducement and contributory infringement are referred to as indirect infringement.  There cannot be indirect infringement without someone else engaging in direct infringement.  To prove indirect infringement, Alarm.com must also prove that SecureNet's actions caused direct infringement.

In order to prove infringement, Alarm.com must prove that the requirements for one or more of these three types of infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

I will now explain each of these types of infringement in more detail.

**4.2     INFRINGEMENT**

In order to prove infringement of the Asserted Claims, Alarm.com must show by a preponderance of the evidence that SecureNet has made or used a product or system that meets every limitation of the claim. Making or using a product that meets every limitation of the claim constitutes infringement. In other words, a claim is infringed if a product or system includes each and every component or practices each and every step of the claim. If a product or system omits any single component or fails to practice any step recited in a claim, that product does not infringe that claim.

You must determine infringement with respect to each patent claim individually.

Someone can infringe a patent without knowing of the patent or without knowing that what they are doing is an infringement of the patent. They also may infringe a patent even though they believe in good faith that what they are doing does not infringe a patent or if they believe in good faith that the patent is invalid. An independently developed product or process that falls within the scope of an Asserted Claim still infringes.

**4.3     INFRINGEMENT — INFRINGEMENT OF MEANS PLUS FUNCTION TERM**

The '619 patent includes the term "connection management component" which I have decided is a means-plus-function term. A product or a process meets a means-plus-function requirement of a claim if you find it more likely than not: (1) it has a structure or a set of structures that perform the identical function recited in the claim, and (2) that structure or set of structures is either identical or "equivalent" to the described set of structure(s) that I defined as performing the claimed function. If the product does not perform the specific function recited in the claim, the "means-plus-function" requirement is not met, and the product does not infringe the claim.

Alternatively, even if the product has a structure or a set of structures that performs the function recited in the claim but the structure or set of structures is not either identical or "equivalent" to the set of structures that I defined to you as being described in the '619 patent and performing this function, the product does not infringe the asserted claim.

A structure or a set of structures may be found to be "equivalent" to the set of structures I have defined as being described in the '619 patent if a person having ordinary skill in the field of technology of the '619 patent either would have considered the differences between them to be insubstantial at the time the '619 patent issued or if that person would have found the structures performed the function in substantially the same way to accomplish substantially the same result. In deciding whether the differences would be "insubstantial," you may consider whether a person having an ordinary level of skill in the field of technology of the patent would have known of the interchangeability of the two structures or sets of structures. Interchangeability itself is not sufficient; in order for the structures to be considered to be interchangeable, the interchangeability of the two structures must have been known to persons of ordinary skill in that art at the time the patent issued. The fact that a structure or a set of structures is known now and is "equivalent" is not enough. The structure or set of structures must also have been available at the time the '619 patent issued. In this case, you will have to decide the level of ordinary skill in the art. I will instruct you later how to decide this. In order to prove direct infringement of a means-plus-function limitation, Plaintiffs must prove the above requirements are met by a preponderance of the evidence.

**4.4    INFRINGEMENT — DIRECT INFRINGEMENT: MAKING AND USING A SYSTEM**

Direct infringement requires that the accused system include every element recited in the claim. To infringe by making a system a single accused infringer must combine all of the claim elements.

To prove infringement by use, Plaintiffs may show that a single accused infringer used the entire system. If the system's use is performed by more than one party, Plaintiffs must prove by a preponderance of the evidence that a single accused infringer put the entire system into service, controlled the system (even if indirectly), and benefited from each claimed element of the system.

**4.5     INFRINGEMENT — INDIRECT INFRINGEMENT**

There are two types of indirect infringement (1) active inducement; and (2) contributory infringement.  There cannot be indirect infringement without someone else engaging in direct infringement. To prove indirect infringement, Alarm.com must also prove that SecureNet's actions caused direct infringement.

**4.5.1     INFRINGEMENT — INDIRECT INFRINGEMENT — ACTIVE INDUCEMENT**

Alarm.com alleges that SecureNet is liable for infringement by actively inducing security system dealers or end users to directly infringe the Asserted Patents. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis. SecureNet is liable for active inducement of a claim only if Plaintiffs prove by a preponderance of the evidence: (1) that the acts are actually carried out by security system dealers or end users directly infringe that claim; and (2) that SecureNet took action during the time the asserted patents were in force intending to cause the infringing acts by security system dealers or end users; and (3) that SecureNet was aware of the asserted patents and knew that the acts, if taken, would constitute infringement of the patent. If you find that SecureNet was aware of the patent, but believed that the acts it encouraged did not infringe that patent, SecureNet cannot be liable for inducement.

**4.5.2     INFRINGEMENT — INDIRECT INFRINGEMENT — CONTRIBUTORY INFRINGEMENT**

Alarm.com argues that SecureNet is liable for contributory infringement by contributing to the direct infringement of the asserted patent by security system dealers and/or end users. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

14

SecureNet is liable for contributory infringement of a claim if Alarm.com proves by a preponderance of the evidence: (1) SecureNet sells within the United States a component of a product, or apparatus for use in a process, during the time the asserted patents are in force; (2) the component or apparatus has no substantial, noninfringing use; (3) the component or apparatus constitutes a material part of the invention; (4) SecureNet was aware of the asserted patents and knew that the products or processes for which the component or apparatus has no other substantial use were covered by a claim of the asserted patents; and (5) that use directly infringes the claim.

## 4.6    WILLFUL INFRINGEMENT

In this case, Alarm.com argues both that SecureNet infringed and, further, that SecureNet infringed willfully. If you have decided that SecureNet has infringed, you must go on and address the additional issue of whether or not this infringement was willful.  Willfulness requires you to determine whether Alarm.com proved that it is more likely than not that the infringement by SecureNet was especially worthy of punishment.  You may not determine that the infringement was willful just because SecureNet knew of the asserted patents and infringed them. Instead, willful infringement is reserved for the most egregious behavior, such as where the infringement is malicious, deliberate, consciously wrongful, or done in bad faith.

To determine whether SecureNet acted willfully, consider all facts. These may include, but are not limited, to:

(1) Whether or not SecureNet acted consistently with the standards of behavior for its industry;

(2) Whether or not SecureNet intentionally copied a product of iControl that is covered by the asserted patents;

(3) Whether or not SecureNet reasonably believed it did not infringe or that the patent was invalid;

(4) Whether or not SecureNet made a good-faith effort to avoid infringing the asserted patents, for example, whether SecureNet attempted to design around the patents; and

(5) Whether or not SecureNet tried to cover up its infringement.

## 5.   INVALIDITY — GENERALLY

To prove that any claim of a patent is invalid, SecureNet must persuade you by clear and convincing evidence, i.e., you must be left with a clear conviction that the claim is invalid.

## 5.1   PRIOR ART

As I stated previously, under the patent laws, a person is granted a patent only if the invention claimed in the patent is new and not obvious in light of what came before. That which came before is referred to as the "prior art." The parties agree that the Honeywell documents (DTX-182, DTX-183, DTX-185, DTX-186, DTX-205, DTX-206, and DTX-220) and the Rezvani '724 patent (DTX-218) are prior art.

### 5.1.1   PRIOR ART CONSIDERED OR NOT CONSIDERED BY THE USPTO

Regardless whether particular prior art references were considered by the United States Patent and Trademark Office (or "USPTO") during the prosecution of the applications which matured into the Asserted Patents, SecureNet must prove that the challenged Asserted Claims are invalid. SecureNet must do so by clear and convincing evidence. This burden of proof on SecureNet never changes regardless whether or not the USPTO considered the reference.

16

Although SecureNet's burden of proof never changes, if the USPTO did consider a reference, it may be more difficult for SecureNet to meet its burden of proof. When a party challenging the validity of a patent presents evidence that was not considered by the Patent Office examiner during the prosecution of the application which resulted in the issued patent, such new evidence may be given more weight and may make it easier to satisfy that party's clear-and-convincing burden.

## 5.2     OBVIOUSNESS

SecureNet contends that the asserted claims of the '931 patent are invalid for obviousness.

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made. SecureNet must prove that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made.

In determining whether a claimed invention is obvious, you must consider: (1) the scope and content of the prior art, (2) the level of ordinary skill in the pertinent art, and (3) the differences between the claimed invention and the prior art.

In deciding what the level of ordinary skill is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

To determine the scope and content of the prior art, you must determine what prior art is reasonably pertinent to the particular problems with which the inventors were faced. The person of ordinary skill in the art is presumed to be aware of all of the pertinent prior art.

The next factor that you must consider is the differences, if any, between the prior art and the claimed inventions. Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks of prior art, and claimed discoveries almost of necessity will likely be combinations of what is already known. In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention there was a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The motivation to modify the prior art to arrive at the claimed invention need not be explicitly stated in the prior art to be combined nor the same motivation that the inventor had.

In deciding the obviousness question, you may take into account such factors as:

a.  Whether the claimed invention was merely the predictable result of using prior art elements according to their known functions;

b.  Whether the claimed invention provides an obvious solution to a known problem in the relevant field;

c.  Whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

d.  Whether the prior art teaches away from combining elements in the claimed invention; and

e.  Whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

18

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, i.e. consider only what was known at the time of the invention.

In making obviousness determinations, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the claimed invention, such as whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities).

Finding secondary considerations may suggest that the claim was not obvious. However, there must be a connection between the evidence showing any of these factors and the claimed inventions if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue. For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the products other than those claimed in the patents in suit, then any commercial success may have no relation to the issue of obviousness.

## 6.   DAMAGES

### 6.1   DAMAGES — GENERALLY

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case on any issue.

The damages you award must be adequate to compensate Alarm.com for the infringement. They are not meant to punish an infringer. Your damages awards, if you reach this issue, should put Alarm.com in approximately the same financial position that it would have been in had the infringement not occurred.

10753780/1

Alarm.com has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Alarm.com establishes that it more likely than not suffered.  While Alarm.com is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

There are different types of damages that Alarm.com may be entitled to recover.  In this case, Alarm.com seeks lost profits and a reasonably royalty. Lost profits consist of any actual reduction in business profits Alarm.com suffered as a result of SecureNet's alleged infringement. A reasonable royalty is defined as the amount of money a patent holder and an alleged infringer would have agreed upon as a fee for use of the invention if they had negotiated about it before the infringement first began. I will give you more detailed instructions regarding damages shortly.

If you find that any of Asserted claims is valid and infringed, then you must determine the damages to which Alarm.com is entitled for SecureNet's infringement.  If you find that the asserted claims of the '931 Patent are invalid, then Alarm.com is not entitled to any damages for that patent. If you find that SecureNet has not infringed any valid claim of the patents, then Alarm.com is not entitled to any damages.

### 6.1.1   CALCULATING DAMAGES IN CASES OF INDUCEMENT OR CONTRIBUTORY INFRINGEMENT

In order to recover damages for induced infringement, Alarm.com must either prove that the allegedly infringing product necessarily infringes the asserted patents or prove acts of direct infringement by others that were induced by SecureNet. Because the amount of damages for induced infringement is limited by the number of instances of direct infringement, Alarm.com must further

prove the number of direct acts of infringement of the asserted patent, for example, by showing individual acts of direct infringement or by showing that a particular class of products directly infringes.

In order to recover damages for contributory infringement, Alarm.com must either prove that the allegedly infringing product necessarily infringes the asserted patents or prove acts of direct infringement by others to which SecureNet made a substantial contribution. Because the amount of damages for contributory infringement is limited by the number of instances of direct infringement, Alarm.com must further prove the number of direct acts of infringement of the asserted patents, for example, either by showing individual acts of direct infringement or by showing that a particular class of products directly infringes.

## 6.1.2   LOST PROFITS — "BUT FOR" TEST

In this case, Alarm.com seeks to recover lost profits for some of SecureNet's sales of its products, and a reasonable royalty on the rest of SecureNet's sales.

To recover lost profits (as opposed to reasonable royalties) Alarm.com must show a causal relationship between the infringement and Alarm.com's loss of profit. In other words, Alarm.com must show that, but for the infringement, there is a reasonable probability that Alarm.com would have earned higher profits. To show this Alarm.com must prove that, if there had been no infringement, Alarm.com would have made some portion of the sales that SecureNet made of its products

Alarm.com is entitled to lost profits if it establishes each of the following:

(1)    That there was a demand for the patented product.

(2)     There were no acceptable non-infringing alternatives to the patented inventions that were available to SecureNet for use in its products.

(3)     That Alarm.com had the manufacturing and marketing capacity to make any infringing sales actually made by SecureNet and for which Alarm.com seeks an award of lost profits—in other words, that Alarm.com was capable of satisfying the demand.

(4)     The amount of profit that Alarm.com would have made if SecureNet had not infringed.

### 6.1.3    LOST PROFITS — DEMAND

Demand for the patented product can be proven by significant sales of a patented product or significant sales of an infringing product containing the patented features.

### 6.1.4    LOST PROFITS — NONINFRINGING SUBSTITUTES — ACCEPTABILITY

To be an "acceptable, noninfringing substitute," a product must have the advantages of the patented invention that were important to people who purchased an alleged infringer's product, but also must not infringe the Asserted Patents. If purchasers of an alleged infringer's product were motivated to buy that product because of features covered by the Asserted Patents, then some other, alternative product is not an acceptable substitute, even if it otherwise competed with a patent holder's and an alleged infringer's products. On the other hand, if the realities of the marketplace are that competitors other than the patentee would likely have captured some or all of the sales made by the infringer, then Alarm.com is not entitled to lost profits on those sales.

### 6.1.5   LOST PROFITS — NONINFRINGING SUBSTITUTES — AVAILABILITY

An alternative product must be non-infringing as I just described but also must be available at the time.  A product may be considered "available" to SecureNet, as a potential substitute for an infringing one, even if the alternative product was not actually on sale during the infringement period. Factors suggesting the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available to SecureNet at the time of infringement. Factors suggesting the alternative was not available include whether an alleged infringer had to design or invent around the patented technology to develop an alleged substitute, whether the infringer lacked the necessary know-how, equipment, and experience to make the alternative, and whether the cost to make the alternative was high.

SecureNet has the burden of proof by a preponderance of the evidence to show that an alternative not actually on sale was available to SecureNet during the damages period. If SecureNet proves the availability of such an alternative, it remains Alarm.com's burden to prove by a preponderance of the evidence that such an alternative was either infringing or not acceptable.

### 6.1.6   LOST PROFITS — CAPACITY

This factor asks whether Alarm.com had the manufacturing and marketing capacity to make the sales it said it lost. This means Alarm.com must prove it is more probable than not that it could have made and sold, or could have had someone else make and sell for it, the additional products it says it could have sold but for the infringement.

23

### 6.1.7   LOST PROFITS — AMOUNT OF PROFIT

A patent holder may calculate its lost profits on lost sales by computing the lost revenue for sales it claims it would have made but for the infringement and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping costs. Certain fixed costs that do not vary with increases in production or scale, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from a patent holder's lost revenue.

### 6.1.8   LOST PROFITS — MARKET SHARE

If a patent holder establishes it would have made some, but not all, of an alleged infringer's sales but for the infringement, the amount of sales that the patent holder lost may be shown by proving the patent holder's share of the relevant market, excluding infringing products. A patent holder may be awarded a share of profits equal to its market share even if there were noninfringing substitutes available. In determining a patent holder's market share, the market must be established first, which requires determining which products are in that market. Products are considered in the same market if they are considered "sufficiently similar" to compete against each other. Two products are sufficiently similar if one does not have a significantly higher price than, or possess characteristics significantly different from, the other.

### 6.2   REASONABLE ROYALTY — ENTITLEMENT

If you find that Plaintiffs have established infringement, Plaintiffs are entitled to at least a reasonable royalty to compensate it for that infringement. If you find that Plaintiffs have not proved

its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then you must award Plaintiffs a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

### 6.2.1   REASONABLE ROYALTY AS A MEASURE OF DAMAGES

A royalty is a payment made to a patent holder in exchange for the right to make or use the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from the hypothetical negotiation.

The reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.  When the infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features.  The ultimate combination of a royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more.

**6.2.2   FACTORS FOR DETERMINING REASONABLE ROYALTY**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)  The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)  The rates paid by the licensee for the use of other patents comparable to the patents in suit.

(3)  The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)  The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly

(5)  The commercial relationship between Plaintiffs and SecureNet, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)  The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)  The duration of the patent and the term of the license.

(8)  The established profitability of the products made under the patents, its commercial success, and its current popularity.

26

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of a commercial embodiment of it, if any, as owned and produced by Alarm.com, and the benefits to those who have used the invention.

(11)    The extent to which SecureNet has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion testimony of qualified experts.

(15)    The amount that a licensor (such as the owner of the patent rights) and a licensee (such as SecureNet) would have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty SecureNet would have been willing to pay and Alarm.com would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between Alarm.com and SecureNet taking place at a time prior to when the infringement began.

### 6.2.3   REASONABLE ROYALTY — APPORTIONMENT

The reasonable royalty award must be based on the incremental value that the patented invention has contributed to the accused product.  When the infringing product has both patented and unpatented features, measuring this value requires a determination of the value added by the patented features. The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more.

### 6.2.4   REASONABLE ROYALTY — ENTIRE MARKET VALUE RULE

A product may have both infringing and non-infringing components. In such products, royalties should be based not on the entire product, but instead on the "smallest salable unit" that practices the patent and has close relation to the claimed invention. Where the smallest salable unit is, in fact, a multi-component product containing several non-infringing features with no relation to the patented feature, damages must only be based on the portion of the value of that product attributable to the patented technology. This may involve estimating the value of a feature that may not have ever been individually sold.

The entire market value rule is a narrow exception to this general rule. In order to recover damages as a percentage of revenues or profits attributable to the entire product, Plaintiffs must

establish that it is more likely than not that the patented feature drives the demand for an entire multi-component product.

### 6.3    DATE OF COMMENCEMENT OF CLAIMED DAMAGES

If  you find that  Plaintiffs are entitled to damages, the date that damages would begin to be calculated in this case  for  the '844 and '619 patent is September 16, 2014.  The date that damages would begin to be calculated in this case for the '931 patent is September 11, 2015.  If you find that Alarm.com is entitled to lost profits damages, the date that lost profit damages would begin to be calculated in this case is March 8, 2017.  For the time period before March 8, 2017, Plaintiffs may only be awarded a reasonable royalty.

### 7.    DELIBERATION AND VERDICT

### 7.1    DELIBERATION AND VERDICT — INTRODUCTION

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is juror No. 1.

One more thing about messages:  Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

## 7.2    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of you deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

**7.3     DUTY TO DELIBERATE**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

**7.4     SOCIAL MEDIA**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, blackberry or computer, the internet, any internet service, any text or instant messaging service, any internet chat room, blog, or website such as Facebook, Instagram, LinkedIn, YouTube or Twitter, to communicate to anyone any information

31

about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

**7.5      COURT HAS NO OPINION**

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

10753780/1