IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALARM.COM, INC. and ICN ACQUISITION, LLC, <br><br> Plaintiffs; <br><br> v. <br><br> SECURENET TECHNOLOGIES, LLC, <br><br> Defendant. | Civil Action No. 15-807-RGA |

## MEMORANDUM OPINION

Kenneth Dorsney, MORRIS JAMES LLP, Wilmington, DE; Ian R. Liston, WILSON SONSINI GOODRICH & ROSATI, P.C., Wilmington, DE; James C. Yoon, Ryan R. Smith, Christopher D. Mays, and Mary A. Procaccio-Flowers, WILSON SONSINI GOODRICH & ROSATI, P.C., Palo Alto, CA, attorneys for Plaintiffs.

Jack B. Blumenfeld and Stephen J. Kraftschik, MORRIS, NICHOLS, ARSHT & TUNNEL LLP, Wilmington, DE; Erik B. Milch, Frank Pietrantonio, and Dustin Knight, COOLEY LLP, Reston, VA; Rose Whelan, Lisa Fuller Schweir, and Naina Soni, COOLEY LLP, Washington, D.C., attorneys for Defendant.

August 23, 2019

*Anhard G. Andrews*
**ANDREWS, U.S. DISTRICT JUDGE:**

Currently pending before the Court is Plaintiffs' Motion for New Trial and Renewed Judgment as a Matter of Law. (D.I. 283). The Parties' have fully briefed the issues. (D.I. 284, 287, 291). For the following reasons, I deny Plaintiffs' motion.

## I. BACKGROUND

Plaintiffs Alarm.com, Inc. and ICN Acquisition LLC brought suit against Defendant SecureNet Technologies LLC alleging infringement of U.S. Patent Nos. 7,855,635 ("the '635 patent"), 8,473,619 ("the '619 patent"), 8,478,844 ("the '844 patent"), and 8,073,931 ("the '931 patent"). Before trial, Plaintiffs narrowed their infringement contentions to allege infringement (both direct and indirect) of claims 1 and 9 of the '931 patent, claims 1 and 55 of the '619 patent, and claim 48 of the '844 patent ("the asserted patents"). Defendant asserted invalidity based on obviousness for claims 1 and 9 of the '931 patent.

During trial, I granted JMOL of no infringement for any asserted claim under the Doctrine of Equivalents. (D.I. 277). At trial, the jury found the following: 1) Plaintiffs did not prove direct, induced or contributory infringement for any of the asserted claims, and 2) Defendant did not prove invalidity of the '931 patent claims.[1] (D.I. 270).

Plaintiffs now move for a new trial or JMOL of infringement on the asserted claims of the '619 and '931 patent. Plaintiffs do not challenge the jury's finding on the '844 patent. Plaintiffs' motion asserts that the jury was exposed to numerous erroneous claim constructions. I have included the relevant claim language below, with the disputed claim language italicized.

---

[1] Because the jury did not find infringement, the jury did not make any finding on willful infringement or damages.

The asserted claims of the '619 patent read as follows:

1. A system comprising:

a gateway located at a first location;

a *connection management component* coupled to the gateway and *automatically establishing* a wireless coupling with a security system installed at the first location, the security system including security system components, wherein the *connection management component* forms a security network by *automatically discovering* the security system components and integrating communications and functions of the security system components into the security network; and

a security server at a second location different from the first location, wherein the security server is coupled to the gateway, wherein the gateway receives security data from the security system components, device data of a plurality of network devices coupled to a local network of the first location that is independent of the security network, and remote data from the security server, wherein the gateway generates processed data by processing at the gateway the security data, the device data, and the remote data, wherein the gateway determines a state change of the security system using the processed data and maintains objects at the security server using the processed data, wherein the objects correspond to the security system components and the plurality of network devices.

55. The system of claim 1, wherein the security server generates and transfers notifications to remote client devices, the notifications comprising event data.

('619 patent, cls. 1, 55) (disputed claim terms italicized). The asserted claims of the '931 patent

read as follows:

1. A device comprising:

a *touchscreen* at a first location, wherein the *touchscreen* includes a processor coupled to a local area network (LAN) and a security system at the first location; and

a plurality of interfaces presented by at least one application executing on the processor of the *touchscreen* and presented to a user via the *touchscreen*, wherein the plurality of interfaces include a security interface and a network interface, wherein the security interface provides the user with control of functions of the security system and access to data collected by the security system, wherein the network interface allows the user to transfer content to and from a wide area network (WAN) coupled to the LAN; and

a remote server at a second location, wherein the remote server is coupled to the *touchscreen*, the remote server managing at least one of the *touchscreen* and

2

the security system, wherein objects are maintained on the remote server that correspond to at least one of at least one security system component of the security system and at least one network device of the LAN.

9. The device of claim 7, wherein the camera is managed by the remote server.

('931 patent, cls. 1, 9) (disputed claim term italicized).

## II.   LEGAL STANDARD

### A.  New Trial

Federal Rule of Civil Procedure 59(a)(1)(A) provides, in pertinent part: "The court may, on motion, grant a new trial on all or some of the issues—and to any party— . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ."  Among the most common reasons for granting a new trial are: (1) the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) newly discovered evidence exists that would likely alter the outcome of the trial; (3) improper conduct by an attorney or the court unfairly influenced the verdict; or (4) the jury's verdict was facially inconsistent. *See Zarow-Smith v. N.J. Transit Rail Operations, Inc.*, 953 F. Supp. 581, 584–85 (D.N.J. 1997).

The decision to grant or deny a new trial is committed to the sound discretion of the district court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Olefins Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282, 289 (3d Cir. 1993) (reviewing district court's grant or denial of new trial motion under the "abuse of discretion" standard).  Although the standard for granting a new trial is less rigorous than the standard for granting judgment as a matter of law—in that the Court need not view the evidence in the light most favorable to the verdict winner—a new trial should only be granted where "a miscarriage of justice would result if the verdict were to stand,"

3

the verdict "cries out to be overturned," or where the verdict "shocks [the] conscience." *Williamson*, 926 F.2d at 1352–53.

## B.  Judgment as a Matter of Law

Judgment as a matter of law is appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party" on an issue.  Fed. R. Civ. P. 50(a)(1).  "Entry of judgment as a matter of law is a 'sparingly' invoked remedy, 'granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability.'"  *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (citation omitted).

"To prevail on a renewed motion for JMOL following a jury trial, a party must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings."  *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (alterations in original). "'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review."  *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984).

In assessing the sufficiency of the evidence, the Court must give the non-moving party, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor and, in general, view the record in the light most favorable to him."  *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991).  The Court may "not determine the credibility of the witnesses [nor] substitute its choice for that of the jury between conflicting elements in the evidence."  *Perkin-Elmer*, 732 F.2d at 893.

4

Rather, the Court must determine whether the evidence supports the jury's verdict. *See Dawn Equip. Co. v. Ky. Farms Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998); *Gomez v. Allegheny Health Servs. Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995) (describing standard as "whether there is evidence upon which a reasonable jury could properly have found its verdict"); 9B *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 2524 (3d ed. 2008) ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury might reasonably find a verdict for that party.").

Where the moving party bears the burden of proof, the Third Circuit applies a different standard. This standard "'requires the judge to test the body of evidence not for its insufficiency to support a finding, but rather for its overwhelming effect.'" *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir. 1976) (quoting *Mihalchak v. Am. Dredging Co.*, 266 F.2d 875, 877 (3d Cir. 1959)). The Court "'must be able to say not only that there is sufficient evidence to support the finding, even though other evidence could support as well a contrary finding, but additionally that there is insufficient evidence for permitting any different finding.'" *Id.* at 1177 (quoting *Mihalchak*, 266 F.2d at 877).

### C. Claim Construction

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324) (alteration in original). When construing patent claims, a court considers the

literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted).

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (citations and internal quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19 (internal quotation marks omitted). Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GMBH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (citation and internal quotation marks omitted).

## III.    DISCUSSION

Plaintiffs' motion focuses on purported errors in claim construction and testimony regarding claim constructions. "Where an infringement verdict relies on incorrect construction of the disputed claim terms, this court may grant JMOL, or order a new trial to correct the error, depending on the degree of difference between the incorrect construction and the correct construction." *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1333 (Fed. Cir. 2008). Thus, for each patent, I will first determine whether there was any error in claim constructions presented to the jury and then, if an error was made, determine whether JMOL or a new trial is warranted.

### A.  The '619 Patent

Plaintiffs allege errors regarding three terms in the '619 patent: "connection management component," "establishing," and "automatic discovery." (D.I. 284 at 4).

#### 1.  Construction of "Connection Management Component" in the '619 Patent

Plaintiffs assert that the Court erroneously construed the claim term "connection management component" in two ways: 1) by construing the term as a "means-plus-function" term under 35 U.S.C. § 112 ¶ 6, and 2) by identifying an overly narrow structure with requirements that are not clearly associated with the identified functions. (D.I. 284 at 4). The Court construed the term "connection management component" as a means-plus-function term with the claimed

7

functions of "automatically establishing a wireless coupling with a separate security system" and "forming a security network by automatically discovering the security system components of a security system and integrating communications and functions of the security system components into the security network" and the corresponding structure of "software executing on a processor using the algorithms shown in Figures 12 and 14." (D.I. 94 at 2-3).

### a. Means-Plus-Function

Plaintiffs assert that the term is not a means-plus-function claim term and should be given the following construction, "manages connections of the gateway." (D.I. 284 at 6). Plaintiffs argue that the Court made several errors in construing the term as a means-plus-function claim by: (1) improperly requiring traditional physical structure in a software limitation, (2) failing to require SecureNet to rebut the inventor's testimony, and (3) failing to address whether the claim term, as a whole, connoted sufficient structure. (*Id.* at 4-5).

**First**, the Court did not improperly require traditional physical structure in a software limitation. Plaintiffs point to *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298-99 (Fed. Cir. 2014), as evidence that software claims do not require physical structure, but may be "understood through, for example, an outline of an algorithm, a flowchart, or a specific set of instructions or rules." However, Plaintiffs have not identified any such structure in the claims or the specification that would allow "connection management component" to be "understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Williamson*, 792 F.3d at 1348. Additionally, the Federal Circuit's opinion in *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366 (Fed. Cir. 2015), similarly construed a software claim limitation as a means-plus-function claim in the absence of the word "means." The Federal Circuit determined that the disputed claim term was a means-plus-function term where it had no

8

commonly understood meaning, was not generally viewed by one skilled in the art to connote a particular structure, and the specification "only describe[d] the term's function and interaction with other parts in the system." *Id.* at 1372-73. Here, the term "connection management component" has no commonly understood meaning, is not generally viewed by those skilled in the art to connote a particular structure, and the specification similarly only describes the term's function and interaction with the other parts of the system. (*See, e.g.*, '619 patent, col. 19:11-14; 32:52-63 33:1-4, 33:32-39, 34:10-26; 35:38-50; 39:35-46).

**Second**, Defendant was not required to rebut testimony of the co-inventor to overcome the presumption. The testimony of a co-inventor is legally irrelevant to claim construction. *Howmedica Osteonics Corp. v. Wright Med. Tech.*, 540 F.3d 1337, 1347 (Fed. Cir. 2008). Even if the Court was required to consider the co-inventor's testimony, it is unpersuasive to support sufficient structure. The co-inventor's testimony that was submitted with the Markman briefing did nothing more than recite the functions of the component. (D.I. 57, Ex. 5 at 244:21-25 ("there's a component in the gateway which, you know, as it states, knows how to connect automatically to those devices")). Therefore, it was unnecessary for Defendant to directly rebut this testimony.

**Third**, the claim term "connection management component," as a whole, does not connote sufficient structure. 35 U.S.C. § 112 ¶ 6 provides,

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

The first question to determine whether § 112 ¶ 6 applies to the claim limitation is whether the claim uses the word "means." If it does, it creates a rebuttable presumption that § 112 ¶ 6 applies. If it does not, it creates a rebuttable presumption that § 112 ¶ 6 does not apply. *Williamson v.*

*Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015). However, as the Federal Circuit noted in *Williamson*, courts should not elevate form over substance when evaluating whether a claim term is a means-plus-function term. "[T]he essential inquiry is not merely the presence or absence of the word 'means' but whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.* (citing *Greenberg*, 91 F.3d at 1583). The presumption that a term is not a means-plus-function term may be overcome where "the challenger demonstrates that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id.* (cleaned up).

Though the claim does not use the term "means," Defendant demonstrated that the claim term failed to recite "sufficiently definite structure" such that the claim term is properly construed as a means-plus-function claim under § 112 ¶ 6. While the claim term does not use the words "means," the word "component" is a "nonce" or non-structural word under § 2181 of the Manual of Patent Examining Procedure. Nor does the preceding "connection management" language provide sufficient structure for this non-structural term, as it is purely functional. The patent does not define the "connection management component," it has no dictionary definition, and Plaintiffs have not suggested that it was generally understood in the art. *MIT v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006). Additionally, Plaintiffs' own claim construction ("manages connections of the gateway" (D.I. 57 at 12) or "component that manages connections of the gateway" (D.I. 91 at 80:5-12)) indicates that the term should be construed as a means-plus-function claim. Plaintiffs' construction describes the "component" purely in terms of the function it performs with no other structure. Thus, Defendant demonstrated that the claim term did not recite

"sufficiently definite structure," thereby rebutting the presumption against the application of § 112 ¶ 6.

Thus, the Court did not err in construing "connection management component" as a means-plus-function term.

### b.  Structure of "Connection Management Component"

Plaintiffs also argue that if § 112 ¶ 6 applies, "the jury was still incorrectly instructed as to the structure of 'connection management component'" because the Court's construction 1) "requires the structure to include the entirety of the algorithms identified in both Figures 12 and 14 of the '619 patent" and 2) "includes structures with no clear association with the claimed functions." (D.I. 284 at 11-12).

To construe a disputed means-plus-function term, the Court must "attempt to construe the disputed claim term by identifying the 'corresponding structure, material, or acts described in the specification' to which the claim term will be limited." *Robert Bosch, LLC v. Snap-On, Inc.*, 769 F.3d 1094, 1097 (Fed. Cir. 2014) (quoting *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1097 (Fed. Cir. 2008)).  Where the means-plus-function term has multiple claimed functions, there must be adequate corresponding structure to perform all the claimed functions. *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1318–19 (Fed. Cir. 2012) ("[W]here a disclosed algorithm supports some, but not all, of the functions associated with a means-plus-function limitation, we treat the specification as if no algorithm has been disclosed at all.  In such instances, we are not faced with a disclosure which addresses itself to an identifiable function, but arguably does so inadequately.").  A "computer-implemented means-plus-function term is limited to the corresponding structure disclosed in the specification and equivalents thereof, and the corresponding structure is the algorithm." *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005).

11

The Court has identified two functions for "connection management component:" "automatically establishing a wireless coupling with a security system installed at the first location," and "forming a security network by automatically discovering the security system components and integrating communications and functions of the security system components into the security network." (D.I. 94 at 2-3).

**First**, Plaintiffs argue the Court's construction is incorrect because Figure 12 and Figure 14 are alternative embodiments. However, Figure 12 alone does not provide sufficient structure for a person of ordinary skill to understand the structure required. (*See id.* at 3 n.4 ("At step 1240, the '[p]lurality of WSS capabilities and devices [are] 'learned' into [the] system.' '619 Patent, Fig. 12. The specification, however, does not describe how this high-level function works.")). As the Court explained in the Claim Construction Order, "Figure 14 teaches the detailed steps after integrating from Figure 12." (*Id.*). Thus, it was not legal error to construe the structure to include the steps of both Figure 12 and 14.

**Second**, Plaintiffs argue that the construction is incorrect because it includes structures with no clear association with the claimed functions. Plaintiffs assert that individual steps of the algorithms shown in Figures 12 and 14 (and included in the structural construction) "have no clear association with the construed functions." (D.I. 284 at 7 (citing *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1330 n.1 (Fed. Cir. 2005)). But *JVW* only requires that the structure as a whole is clearly associated with the claimed functions, not that each individual step of the algorithm is. *JVW Enters.*, 424 F.3d at 1330 n.1 ("the specification in no way associates the 'interlacing of fitting parts into each other' with the claimed function of 'lockably receiving a video game controller in fixed position'"). Plaintiffs do not dispute that Figure 12 and Figure 14 are

12

clearly associated with the claimed functions. Thus, the construction of "connection management component" is correct.

## 2. Dr. Polish's Purportedly Erroneous Construction of "Establishing"

Plaintiffs allege that Dr. Polish presented an erroneous application of "establishing" to the jury, and therefore a new trial on the '619 patent is warranted. The term "establishing" was not construed by the Court. Plaintiffs argue that Dr. Polish's testimony "that SecureNet's server does not 'automatically establish a wireless coupling with a separate security system' because the IGM reaches out to the server first" is "a flawed and overly narrow interpretation of 'establish a wireless coupling.'" (D.I. 284 at 8). Defendant argues that Plaintiffs have failed to preserve their objections to Dr. Polish's testimony because Plaintiffs did not object in a *Daubert* motion or during trial. (D.I. 287 at 7-8).

I agree with Defendant that Plaintiffs waived their objection to Dr. Polish's testimony by failing to object. Indeed, the section of testimony Plaintiffs cite contains no objection by the Plaintiffs to Dr. Polish's testimony. It is well-settled that "litigants waive their right to present new claim construction disputes if they are raised for the first time after trial." *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 694 (Fed. Cir. 2008); *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 974 (Fed. Cir. 2018). Here, the Parties never proposed a claim construction of "establishing." (D.I. 51, 57, 58, 85). They did not object at trial, nor request that I construe the term "establishing" when discussing jury instructions. Thus, the issue has been waived.

Even had the issue not been waived, I would not find Dr. Polish's construction to be legally erroneous. The claim language defines "automatically establishing" as a function of the "connection management component." ('619 patent, cl. 1). This indicates that the "connection

13

management component" must be the piece initiating the interaction. The remainder of the claim language also indicates that the "connection management component" is the piece of the system "acting" on the other components. ('619 patent, cl. 1 ("connection management component forms a security network by automatically discovering the security system components and integrating communications and functions of the security system components into the security network")). Thus, Dr. Polish's testimony was not legally erroneous.

### 3. Dr. Polish's Purportedly Erroneous Construction of "Automatic Discovery"

Plaintiffs allege that Dr. Polish presented an erroneous application of "automatic discovery"[2] to the jury, and therefore a new trial on the '619 patent is warranted. The term "automatic" was construed by the Court to mean "without user input". (D.I. 94 at 1). Thus, "automatic discovery" is construed as "discovery without user input." Plaintiffs argue that Dr. Polish misinterpreted the Court's construction of "without user input" when he testified "that a security sensor is not 'automatically discovered' if the sensor is discovered by the panel upon being 'tripped'" as part of its intended purpose. (D.I. 284 at 9). Defendant argues that Plaintiffs have failed to preserve their objections to Dr. Polish's testimony because Plaintiffs did not object in a *Daubert* motion or during trial. (D.I. 287 at 7-8).

I agree with Defendant that Plaintiffs waived their objection to Dr. Polish's testimony by failing to object. Indeed, the section of testimony Plaintiffs cite contains no objection by the Plaintiffs to Dr. Polish's testimony. It is well-settled that "litigants waive their right to present new claim construction disputes if they are raised for the first time after trial." *Broadcom Corp.*, 543 F.3d at 694; *see also Power Integrations*, 904 F.3d at 974. Here, the Parties never proposed

---

[2] The claim term is actually "automatically discovering." ('619 patent, cl. 1). However, the parties both discuss this term using the phrase "automatic discovery" and I will adopt their terminology for the purposes of this opinion.

a claim construction of "discovering." (D.I. 51, 57, 58, 85). They did not object at trial, nor request that I construe the term "discovering" when discussing jury instructions. Thus, the issue has been waived.

Even if Plaintiffs had not waived their objection, I would not find Dr. Polish's testimony regarding "automatic" to be legally erroneous. The Court's claim construction clearly contemplated that "no human input or intervention is allowed." (D.I. 94 at 1 n.2). Plaintiffs miscast Dr. Polish's testimony as a statement "that triggering a sensor in its normal operation constitutes 'user input.'" However, Dr. Polish testified that "with the sensors, in all cases, when you're setting them up, you have to, at some point, trip them to tell the panel what sensor you're talking about. So if you – if you put a motion sensor up top, you eventually have to wave at it, or trip it." (D.I. 295 at 713:18-22; *see also id.* at 714:5-9). This testimony is not inconsistent with the Court's claim construction of "automatic."

Nor would I find Dr. Polish's testimony regarding "discovery" to be legally erroneous. "Discovery" was not construed. As Defendant notes, "The specification of the '619 patent references 'discovering' devices as a process associated with finding new devices to be installed." (D.I. 287 at 10 (citing '619 patent, 13:28-31, 19:42-53, 24:66-25:11)). Dr. Polish's testimony regarding Z-Wave devices complies with the claim language.[3] (D.I. 295 at 713:18-22, 714:5-9; '619 patent, cl. 1). As Defendant notes, the specification mentions Z-Wave twice, but never in the context of automatic discovery, unlike Wifi, camera, IP devices and RF transceivers. (D.I. 287 at 11). Dr. Polish's testimony is thus not erroneous.

---

[3] Plaintiffs assert that his testimony is erroneous because it contradicts the specification and excludes an embodiment. However, neither action make the testimony erroneous. Dr. Polish's testimony needs only comply with the claim language (as construed, if construed by the Court).

### 4. JMOL or New Trial on '619 Patent

Because the Court's construction of "connection management component" and Dr. Polish's testimony regarding "establishing" and "automatic discovery" were not legally erroneous, there is no error sufficient to warrant a new trial. Furthermore, Plaintiffs' motion does not address whether JMOL of infringement of the '619 patent is warranted with the governing construction of "connection management component." Because Plaintiffs have not challenged the sufficiency of Defendant's evidence under the governing claim construction, I will deny Plaintiffs' motion with respect to the '619 patent.

## B. The '931 Patent

### 1. Dr. Polish's Purportedly Erroneous Construction of "Touchscreen"

Plaintiffs allege that Dr. Polish presented an erroneous application of the claim construction of "touchscreen" to the jury, and therefore a new trial on the '931 patent is warranted. (D.I. 284 at 10-11). The Parties stipulated that the term "touchscreen" would be construed as "a component with a display screen that can receive input via touch." (D.I. 85 at 3). Plaintiffs argue that Dr. Polish's testimony that the claims required that the touchscreen and the security panel have to be separate things was erroneous and prejudicial, warranting a new trial. (D.I. 284 at 10 (citing D.I. 295 at 753:25-756:21)). Defendant argues that Plaintiffs have failed to preserve their objections to Dr. Polish's testimony because Plaintiffs did not object in a *Daubert* motion or during trial.

I agree with Defendant that Plaintiffs waived their objection to Dr. Polish's testimony by failing to object. Indeed, the section of testimony Plaintiffs cite contains no objection by Plaintiffs to Dr. Polish's testimony. It is well-settled that "litigants waive their right to present new claim construction disputes if they are raised for the first time after trial." *Broadcom Corp.*, 543 F.3d at 694; *see also Power Integrations, Inc.*, 904 F.3d at 974. Here, the Parties' originally proposed

16

constructions did not indicate a dispute on whether or not the touchscreen must be separate from the security panel. (D.I. 51 at 12). The Parties ultimately stipulated to a construction of "touchscreen." (D.I. 85 at 3). When a claim construction dispute arises for the first time at trial, parties must object to the testimony or request further modification or clarification of the claim term. *Lazare Kaplan Intern., Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1375-76 (Fed. Cir. 2010). Thus, to preserve their objection about the scope of the agreed-upon claim construction of "touchscreen," Plaintiffs must have objected to the testimony or requested that I further modify or clarify the construction.[4] Plaintiffs did not do so, and thus are attempting to present a new claim construction dispute for the first time after trial. Plaintiffs have waived that right.

Even if Plaintiffs had not waived any objection to Dr. Polish's testimony regarding the touchscreen, it is not clear to me that Dr. Polish's testimony is legally erroneous. Dr. Polish's testimony relies upon the language of the claim, which states, "a *touchscreen* at a first location, wherein the *touchscreen* includes a processor coupled to a local area network (LAN) and a security system at the first location." ('931 patent, cl. 1). As I understand the parties' dispute, Dr. Polish's testimony appears to be a reasonable reading of the claim language that is not inconsistent with the parties' agreed-upon construction of the term. Thus, I cannot say that Dr. Polish's testimony was legally erroneous.

## 2. New Trial

Even if Plaintiffs had not waived the objection to Dr. Polish's testimony regarding the touchscreen, and the testimony involved an erroneous understanding of the claims, Dr. Polish's testimony was not so prejudicial as to warrant a new trial. Plaintiffs did not object to Dr. Polish's

---

[4] I note that Plaintiffs did not cross-examine Dr. Polish on the opinions they now object to as improper claim construction.

17

testimony, did not cross-examine him on it, and did not ask the Court to further clarify the construction of the term to the jury. This inaction by Plaintiffs suggests that in the overall context of the trial, Dr, Polish's testimony was less prejudicial than Plaintiffs now maintain. Thus, a new trial is not warranted on the '931 patent on the grounds of prejudice.

### 3. JMOL – Infringement

Plaintiffs assert I should grant JMOL of infringement of claims 1 and 9 of the '931 patent. Plaintiffs assert that Defendant did not offer substantial evidence supporting a jury verdict of noninfringement, arguing the insufficiency of Defendant's evidence in regards to the "touchscreen" and "network interface" limitations. (D.I. 284 at 14-15). Specifically, Plaintiffs point to Dr. Polish's concession that a mobile device could be used over a wi-fi network in an end user's home. (*Id.* at 15).

Dr. Polish's testimony posited three possible infringement scenarios: "(1) a mobile device outside the first location, (2) a mobile device at the first location but connected to a cellular network, and (3) a mobile device at the first location and connected to the local area network." (D.I. 287 at 16). First, Dr. Polish explained that if a mobile device is used outside the home (the home being the "first location"), the device cannot satisfy claim 1 because it is not "at a first location" as required. (*Id.*). Second, Dr. Polish testified that if a mobile device is used inside the home, and is thus at the "first location," but uses the cellular network, the device is not "coupled to a local area network." (*Id.*). Third, Dr. Polish testified that if a mobile device is used inside the home and connected to the local area network, it does not meet the claim because it does not contain a "network interface" that "allows the user to transfer content to and from a wide area network (WAN) coupled to the LAN." (*Id.* at 17). As Dr. Polish testified, neither the push-to-talk feature nor the controlling non-security devices transfers content to and from a WAN. (*Id.*).

18

Plaintiffs argue that Dr. Polish's testimony is legally inadequate because "the mere fact that an accused system is configured to operate in an infringing manner is alone sufficient to show infringement." (D.I. 284 at 14 (citing *Intel Corp. v. ITC*, 946 F.2d 821, 832 (Fed. Cir. 1991)). However, in *Intel Corp.*, the Court relied on the specific language of the claims, which pointed to device configuration rather than operation. (*Id.*). Here, the claims do not contain similar language and Dr. Polish testified that the device cannot operate in an infringing manner. (D.I. 287 at 16-18). I determine that Defendant presented substantial evidence supporting the jury's verdict of non-infringement of the '931 patent.[5] Thus, I will deny Plaintiffs' motion for JMOL of infringement of the '931 patent.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for New Trial and Renewed JMOL is denied. An accompanying order will be entered.

---

[5] Plaintiffs present this argument as though Defendant had some burden of proof on "non-infringement." Of course, it is Plaintiffs' burden to prove infringement. I think respect for a jury verdict generally requires recognition that someone who has the burden of proof might lose even in the absence of a substantial "non-infringement" case simply because the jury does not have to accept "unrebutted" expert testimony. The jury might decide that an expert is biased, confused, impeached, or testifying beyond the expert's area of expertise, among other things. The jury is told that it can reject expert testimony for any number of reasons. (D.I. 251 at 3-4; D.I. 268 at 5-6). That is why the Third Circuit's cases make it so hard to get a JMOL for an issue on which the moving party had the burden of proof.